IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CAITLYN ROSE EICHMANN,<br>*Plaintiff,* | § § § | |
| v. | § § § | CIVIL ACTION NO. 3:24-CV-106 |
| THE U. OF HOUSTON SYS., et al.,<br>*Defendants.* | § § § § | |

## DEFENDANT UNIVERSITY OF HOUSTON SYSTEM'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)

COMES NOW Defendant University of Houston System ("UHS"), and files this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support thereof, UHS respectfully offers the following:

## I.
## BACKGROUND

This case arises from an alleged student-on-student sexual assault that occurred in a dormitory room on the University of Houston's ("UH") campus in March 2022. On the evening of March 2, 2022, Plaintiff Caitlyn Eichmann ("Eichmann") accompanied a male student, Felipe Harker ("Harker"), to the University Lofts dormitory building on the campus of UH, where both Eichmann and Harker proceeded to consume alcohol with a third student. ECF No. 1 at 3. Sometime in the early morning hours of March 3, Eichmann and Harker, who each had their own dorm rooms in the University Lofts building, left the third student's dorm room, walked to Harker's room, and continued drinking. ECF No. 1 at 3. After leaving the building for a period of time, Eichmann and Harker returned to Harker's dorm room at approximately 5:18 a.m., during which time Eichmann alleged that she was experiencing "black out" effects from alcohol and "lost

all her memory save for a few flashes in and out," including flashes of Harker "having his hands around her neck, squeezing her neck, and trying to have sex with her." ECF No. 1 at 4. Eichmann alleged her next memory "was waking up in Defendant Harker's bed in a state of complete undress except for her underwear" and "realized that Defendant Harker had sexually assaulted her[.]" ECF No. 1 at 4.

At some unidentified time after the alleged assault, Eichmann notified UHS of the assault, and UHS began a Title IX investigation through its Office of Equal Opportunity Services ("EOS"), in addition to affording Eichmann the opportunity to transfer housing locations away from the University Lofts, where Harker remained. ECF No. 1 at 5–6. As a part of its investigation, UHS's EOS asked for Eichmann's interview. ECF No. 1 at 6. Eichmann, however, refused to participate in the Title IX investigation and, instead, directed EOS to a police report allegedly containing Eichmann's statement concerning the assault. ECF No. 1 at 6. According to Eichmann, UHS "deemed [her] to be unwilling to cooperate and dropped its investigation" on April 22, 2022. ECF No. 1 at 6. That same day, Eichmann claimed she "observed Defendant Harker for the first time since her sexual assault . . . as she observed him entering the University Lofts . . . even though she was one [sic] Defendant [UHS] asked to move into another university housing unit." ECF No. 1 at 5. Eichmann alleged that her observation of Harker caused serious emotional distress and her eventual withdrawal as a student from UH. ECF No. 1 at 5.

In November 2023, Eichmann learned that "the State of Texas would not be pursuing a criminal action against Defendant Harker." ECF No. 1 at 7. Approximately two months later, Eichmann alleged that UHS notified her that it would not be taking remedial action against Harker. ECF No. 1 at 7.

On April 12, 2024, Eichmann filed an Original Complaint against UHS and Harker in which she asserted a negligence claim under the Texas Tort Claims Act ("TTCA") and a Title IX claim for deliberate indifference against UHS stemming from the March 3, 2022, sexual assault involving Harker. Eichmann seeks damages in the form of loss of educational benefits, consequential damages, past and future medical expenses, compensatory damages, exemplary damages, pre- and post-judgment interest, attorney's fees, and costs. UHS now files its Motion to Dismiss Eichmann's claims against it with prejudice.

## II.
## ARGUMENT & AUTHORITIES

**A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(1) when it seeks to challenge the subject-matter jurisdiction of a district court in a case. FED. R. CIV. P. 12(b)(1). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The burden of proof for a Rule 12(b)(1) motion is always borne by the party claiming jurisdiction. *Id.* When a party files multiple Rule 12 motions, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

Because UHS has not waived sovereign immunity as to Eichmann's negligence claim under the TTCA, this Court does not have subject-matter jurisdiction over Eichmann's negligence claim, which must be dismissed.

### 1. Eichmann failed to state a negligence claim under the TTCA.

Eichmann's negligence claim against UHS is barred under the TTCA. Governmental entities, such as state agencies, are immune from suit absent a legislative waiver. *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000). "Under Texas law, state universities . . . are agencies of the State and enjoy sovereign immunity." *Jackson v. Texas Southern University*, 997 F. Supp. 2d 613, 623 (S.D. Tex. 2014). UHS is a university system comprised of several different state universities, including UH, and all of which are "subject to the obligations and entitled to the benefits of all general laws of Texas applicable to all other state institutions of higher education[.]" TEX. EDUC. CODE § 111.02. Under the TTCA, the State Legislature provided "a limited waiver of sovereign immunity and allow[ed] suits against governmental units only in certain narrow circumstances." *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). That limited waiver is stated in Section 101.021:

> A governmental unit in the state is liable for:
>
> (1) property damage [or] personal injury . . . proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>   (A) the property damage [or] personal injury . . . arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
>   (B) the employee would be personally liable to the claimant according to Texas law;[] and
>
> (2) personal injury . . . so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021(1)–(2).

In this case, Eichmann's negligence claim under the TTCA does not trigger a waiver of UHS's entitlement to sovereign immunity. In her Original Complaint, Eichmann specifically pled the following concerning her negligence claim under the TTCA:

> 39. Defendant UHS, by virtue of the above-mentioned contract, undertook to and was obligated to provide reasonable means to secure the person and property of the students, including plaintiff, while they were residents on Defendant UHS' main campus.
>
> 40. The above-described attack[, i.e., Harker's alleged sexual assault of Eichmann in his dorm room,] occurred because of the negligence of Defendant UHS and Defendant UHS would be liable to plaintiff under Texas law. Specifically, Defendant UHS negligently failed to provide adequate measures of security, including patrols, locks and reasonable rules and regulations to be observed by the students to prevent student-residents from sexually assaulting other students in its dorms.

ECF No. 1 at 8. None of Eichmann's allegations fall within the limited waiver of sovereign immunity stated in Section 101.021 of the TTCA. First, the circumstances giving rise to Eichmann's negligence claim—namely, an alleged sexual assault in the dorm room of another student—have nothing to do with the security of students' "property" on campus, and Eichmann fails to present any facts establishing otherwise. Second (and more directly related to Section 101.021(1)), Eichmann's negligence claim does not arise from a UHS employee's operation or use of a motor-driven vehicle or motor-driven equipment, nor does Eichmann state any facts in her Original Complaint showing that her alleged sexual assault arose from a UHS employee's operation or use of a motor-driven vehicle or motor-driven equipment. Therefore, Eichmann has failed to assert a waiver of UHS's sovereign immunity under Section 101.021(1).

Similarly, Eichmann's allegations do not fall within the limited waiver of sovereign immunity contained in Section 101.021(2). Eichmann alleges no facts in her Original Complaint supporting a finding that her injury from an alleged student-on-student sexual assault was "caused by a condition or use of tangible personal or real property[.]" TEX. CIV. PRAC. & REM. CODE

5

§ 101.021(2). Eichmann has also failed to show how UHS would be liable to her under Texas law were it a private person. Accordingly, Eichmann has failed to state a negligence claim under the TTCA, and the Court should dismiss her claim without prejudice. *See Warnock v. Pecos County, Texas*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

**B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

A court should grant a 12(b)(6) motion to dismiss if a pleading fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conclusory allegations will not defeat a Rule 12(b)(6) motion. *Guidry v. Bank of LePlace*, 954 F.2d 278, 281 (5th Cir. 1992); *see also Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) ("a plaintiff must plead specific facts, not mere conclusory allegations"). Additionally, "a court is not bound to accept legal conclusions couched as factual allegations." *Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 468 (W.D. Tex. 2011); *Plummer v. University of Houston*, No. 4:14-CV-2959, 2015 WL 12734039, at *7 (S.D. Tex. May 28, 2015) ("[L]egal conclusions masquerading as factual conclusions need not be treated as true."). As an initial matter, Eichmann's negligence claim under the TTCA is time-barred and should thus be dismissed. Eichmann's Title IX claim should similarly be dismissed under Rule 12(b)(6) because she failed to state a Title IX claim against UHS when

she did not allege facts showing that UHS was deliberately indifferent and that the alleged harassment from Harker was "pervasive." Eichmann's claim for punitive damages against UHS should also be dismissed, as Eichmann is not entitled to punitive damages under either the TTCA or Title IX.

**1. Eichmann's negligence claim is time-barred.**

Eichmann failed to comply with the two-year statute of limitations for her negligence claim against UHS under the TTCA. Her claim is thus time-barred and must be dismissed. "[A] person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.003; *see also City of Houston v. Meka*, No. 01-22-00002-CV, 2023 WL 3063397, at *4 (Tex. App.—Houston [1st Dist.] Apr. 25, 2023, pet. filed). "[A] cause of action sounding in negligence accrues at the time of the act or omission alleged to constitute negligence[.]" *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Texas*, 20 F.3d 1362, 1371 (5th Cir. 1994); *Jones v. Texaco, Inc.*, 945 F. Supp. 1037, 1041 (S.D. Tex. 1996) (". . . a cause of action generally accrues when a wrongful act effects an injury, regardless of when the plaintiff learns of such injury").

Here, Eichmann asserted a negligence claim against UHS and alleged that UHS "negligently failed to provide adequate measures of security . . . to prevent student-residents from sexually assaulting other students in its dorms[,]" leading Eichmann to sustain personal injury when she was allegedly sexually assaulted by Harker. ECF No. 1 at 8. The alleged sexual assault forming the basis of Eichmann's negligence claim against UHS occurred on March 3, 2022. ECF No. 1 at 3. Therefore, Eichmann's negligence claim against UHS accrued on March 3, 2022; however, she did not file her Original Complaint asserting her negligence claim until April 12,

2024. Accordingly, Eichmann's negligence claim against UHS is time-barred and must be dismissed.

### 2. Eichmann failed to state a Title IX claim against UHS.

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). "A school that receives federal funding may be held liable for student-on-student sexual harassment." *I.L. v. Houston Ind. Sch. Dist.*, 776 Fed. App'x 839, 842 (5th Cir. 2019) (citing *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999)). To establish a typical Title IX claim, a plaintiff must show that the defendant:

> (1) had actual knowledge of the harassment, (2) the harasser was under the [defendant's] control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit, and (5) the [defendant] was deliberately indifferent to the harassment.

*Doe v. Texas A&M Univ.*, 634 F. Supp. 3d 365, 374–75 (S.D. Tex. 2022). "[W]hile the school is not itself committing the sexual harassment, it can be said to be intentionally discriminating if it knows of *severe and pervasive* sexual harassment occurring within its control and, for example, does nothing." *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 658 (W.D. Tex. 2017) (emphasis added). Because Eichmann has not pled facts showing that UHS was deliberately indifferent or that any alleged harassment was "pervasive," Eichmann has not stated a Title IX claim.

### a. Eichmann has not alleged facts showing that UHS was deliberately indifferent to her sexual assault allegation.

In the Title IX context, "deliberate indifference . . . is . . . a high bar. Deliberate indifference requires the [University's] response to be clearly unreasonable in light of the known circumstances." *Roe v. Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022)

8

(internal quotation marks omitted); *Sanches v. Carollton-Farmers Branch Ind. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) (stating that deliberate indifference in a Title IX case "is a high bar, and neither negligence nor mere unreasonableness is enough."). "Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, even if the harm ultimately was not avoided." *Doe ex. rel. Doe v. Dallas Ind. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (internal quotation marks omitted). Notably, "Title IX does not require flawless investigations or perfect solutions." *Id.* at 170.

On the face of her complaint alone, Eichmann has failed to state a Title IX deliberate indifference claim against UHS. Eichmann alleged in her complaint that she was sexually assaulted by a fellow student (Harker) at the University Lofts dormitory during the early morning hours of March 3, 2022. ECF No. 1 at 3–4. Eichmann claimed that—before the assault—(1) she and Harker were both student residents at the University Lofts, a dormitory building on UH's main campus, (2) she "was aware that [Harker] also resided in the University Lofts," and (3) she accompanied a friend (with Harker in tow) back to her friend's room at the University Lofts, where all three began drinking wine. ECF No. 1 at 2, 3. Later that evening, Eichmann "went with Defendant Harker to his dormitory room on the eighth floor of the University Lofts," where they continued to consume alcohol, then left together to walk to UH's Architecture building, and returned to Harker's dorm room at the University Lofts at approximately 5:18 a.m. ECF No. 1 at 3–4. At that time, Plaintiff alleged she was in a complete state of intoxication and experienced loss of memory save "flashes in and out" of Harker "having his hands around her neck, squeezing her neck, and trying to have sex with her." ECF No. 1 at 4. Upon waking, Eichmann "realized that Defendant Harker had sexually assaulted her, as she became aware that she had sex but had no memory of consenting to engaging in sexual intercourse with him." ECF No. 1 at 4.

At some unidentified time after she was assaulted, Eichmann alleged that she "made [UHS] aware of the sexual assault by Defendant Harker, [and that UHS's] EOS office informed plaintiff that it would investigate the allegations *and permitted plaintiff to move into a different campus housing unit*." ECF No. 1 at 5–6 (¶ 25) (emphasis added). Although Paragraph 25 of Eichmann's complaint leaves the impression that Eichmann sought a transfer to another dormitory away from Harker that UHS then "permitted," Eichmann stated three paragraphs earlier that sometime during its investigation of Eichmann's allegations against Harker, UHS "*asked* [Eichmann] to move into another university housing unit." ECF No. 1 at 5 (¶ 22) (emphasis added).

In addition to affording Eichmann the opportunity to change housing locations away from Harker while it investigated her allegations, UHS required an interview of Eichmann in which it was expected that she would provide necessary details to the EOS office concerning her assault allegations for UHS's Title IX investigation. ECF No. 1 at 6. Instead of cooperating with the EOS office's investigation, however, Eichmann refused to be interviewed and informed the office "that she had already given a full statement to Defendant [UHS's] police department and provided it with the detective's contact information." ECF No. 1 at 6.

To be deliberately indifferent, as a matter of law, UHS's response must have been "clearly unreasonable in light of the known circumstances." *Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th at 341. Moreover, "a school's response need not be effective in remedying the harassment, and *no particular remedial action is required*." *K.S. v. Northwest Ind. Sch. Dist.*, 689 F. App'x 780, 784 (5th Cir. 2017) (emphasis added). Given that Eichmann directed UHS's EOS office to the statement she provided to UH's police department, she would presumably not dispute that "it is *not* clearly unreasonable to rely on the investigative expertise of a law enforcement agency," *see Houston Ind. Sch. Dist.*, 776 Fed. App'x at 346—and yet, her Original Complaint alone establishes

that UHS was not willing to rely merely on her apparent statement to the UH police department concerning her allegations against Harker but instead sought to conduct its own Title IX investigation in which UHS required Eichmann's participation and interview. ECF No. 1 at 6. *Only after* (1) UHS provided Eichmann with a housing change away from Harker, (2) UHS commenced a Title IX investigation, and (2) UHS determined that Eichmann was unwilling to cooperate in UHS's Title IX investigation into her allegations against Harker did UHS conclude that its Title IX investigation could not proceed without Eichmann's involvement.

Based on the facts presented in Eichmann's complaint, UHS "took some action in response to the specific incidents alleged by" Eichmann "and to the overall situation"—namely, providing Eichmann with housing at a location separate and apart from the University Lofts (where she and Harker were both residents at the time of the alleged assault) and commencing a Title IX investigation into Eichmann's assault allegations that only concluded after Eichmann refused to cooperate with UHS's EOS office conducting the investigation. *Northwest Ind. Sch. Dist.*, 689 F. App'x at 784; ECF No. 1 at 5–6; *see also I.F. v. Lewisville Ind. Sch. Dist.*, 915 F.3d 360, 376–77 (5th Cir. 2019) (stating that "[o]nce it began its investigation, . . . [the school district's] response was not deliberately indifferent."). Clearly then, UHS cannot be said to have "do[ne] nothing," and Eichmann has failed to present sufficient factual allegations to state a claim for deliberate indifference against UHS. *See Doe 1*, 240 F. Supp. 3d at 658; *see also Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015) (concluding that a school district was not deliberately indifferent to severe and pervasive racial harassment when it "took some action in response to almost all of the incidents" including allowing a plaintiff to park in the teacher's lot and work in the counselor's office when a noose was found near her car in the school parking lot). Even assuming, *arguendo*, that UHS's response to Eichmann's assault allegations amounted to a

"weaker response[,]" its response was "not tantamount to intentionally subjecting [a student] to harassment." *Northwest Ind. Sch. Dist.*, 689 F. App'x at 784. Accordingly, Eichmann has failed to allege facts showing that UHS was deliberately indifferent, and her Title IX claim should thus be dismissed.

### b. Eichmann's complaint does not contain factual support establishing that she suffered "pervasive" harassment.

Eichmann's allegation that UHS "failed to ensure she would not be subjected to continuing assault and harassment by failing to move Defendant Harker and requiring [P]laintiff to have to interact with him on a regular basis" is conclusory and entirely unsupported by any factual enhancement in her complaint. "To be actionable under Title IX, harassment must be '*so severe, pervasive, and objectively offensi*ve that it effectively bars the victim's access to an educational opportunity or benefit." *Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th at 342 (citing *Sanches*, 647 F.3d at 165) (emphasis added). Concerning this particular element of a Title IX claim, the *Cypress-Fairbanks* court noted a circuit split on the meaning of "pervasive":

> There is a circuit split regarding whether a "single instance of sufficiently severe one-on-one peer harassment" could even rise to the level of "pervasive" harassment. Three circuits have held that "pervasive" student-on-student harassment for Title IX purposes "means *multiple* incidents of harassment; one incident of harassment is not enough." *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 620 (6th Cir. 2019), *see K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000). On the other side of the split, four circuits have held that students must demonstrate only that a school's deliberate indifference made harassment more likely, not that it actually led to any additional post-notice incidences of harassment. *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 274 (4th Cir. 2021); *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1108 (10th Cir. 2019); *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172 (1st Cir. 2007), *reversed and remanded on other grounds*, 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1295–97 (11th Cir. 2007).

Our Circuit has not yet opined on what constitutes "pervasive" harassment[.] *Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th at 342–43.

While the meaning of "pervasive" in the context of a Title IX claim has not yet been addressed by the Fifth Circuit, this Court should conclude that Eichmann's failure to allege facts showing sustained harassment after the alleged March 3, 2022 sexual assault by Harker does not satisfy Title IX's requirement that Eichmann have suffered "pervasive" harassment. After her encounter with Harker on March 3, Eichmann alleges that she only saw Harker one other time—specifically on April 22, 2022, when she "*observed* him entering the University Lofts . . . even though she was [the] one [UHS] asked to move into another university housing unit." ECF No. 1 at 5 (emphasis added). Apart from one *observation* of Harker (which, according to Eichmann's complaint involved no interaction), Eichmann asserted no facts supporting her conclusory contention that she was "subjected to continuing assault and harassment" or that she "[had] to interact with [Harker] on a regular basis" after March 3, 2022. ECF No. 1 at 9; *Tuchman*, 14 F.3d at 1067 (5th Cir. 1994) (to survive a 12(b)(6) motion to dismiss, "a plaintiff must plead specific facts, not mere conclusory allegations"). Further, Eichmann presented no factual allegations establishing that she suffered "severe, pervasive, and objectively unreasonable" harassment resulting from UHS's attempt to conduct a Title IX investigation and transfer of Eichmann to different housing accommodations.

Even if this Court were inclined to follow circuit courts on the other side of the split—that is, concluding that "pervasiveness" contemplates "a school's deliberate indifference [making] harassment more likely, not that it actually led to any additional post-notice incidences of harassment," *Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th at 342–43—Eichmann has still not stated a Title IX claim when she failed to allege facts showing that UHS was deliberately indifferent in

its response to her sexual assault allegation. As mentioned previously, after Eichmann alerted UHS's EOS office of the alleged sexual assault involving Harker, UHS (1) afforded Eichmann a transfer to another housing complex away from the University Lofts, (2) commenced a Title IX investigation, and (3) only concluded that investigation after Eichmann refused to participate in UHS's investigatory process. Although Eichmann later "observed" Harker on April 22 (with no alleged interaction between the two or any indication that Harker was even aware of Eichmann's presence), Eichmann made no allegation that any harassment resulted from her observation of Harker entering the building (University Lofts) where his dorm was located or at any other time. Further, it is established law that "a school's response need not be effective in remedying the harassment, and no particular remedial action is required." *Northwest Ind. Sch. Dist.*, 689 F. App'x at 784. Therefore, to the extent Eichmann claims that UHS's January 2024 notification to her that it would not be pursuing remedial action against Harker constituted deliberate indifference, Eichmann's Title IX claim fails as a matter of law. *See* ECF No. 1 at 6–7, 9.

In sum, while her allegations of sexual assault are disturbing, Eichmann has simply not met her burden under Title IX of alleging facts showing that she was the victim of harassment that was pervasive and that UHS was deliberately indifferent to the harassment. Accordingly, this Court should dismiss Eichmann's Title IX claim against UHS.

### 3. Eichmann is not entitled to punitive damages under the TTCA or Title IX.

Eichmann is not entitled to punitive damages under the TTCA. Pursuant to Section 101.024, the TTCA "does not authorize exemplary damages." TEX. CIV. PRAC. & REM. CODE § 101.024. In her Original Complaint, Eichmann sought punitive damages related to her allegations against UHS. *See* ECF No. 1 at 10 (¶ 54). As a matter of law, Eichmann is not entitled to such damages for her negligence claim under the TTCA.

Similarly, Eichmann is not entitled to punitive damages under Title IX. "[I]t is clear that punitive damages are not recoverable under Title IX." *Ayala v. Omogbehin*, No. CV H-16-2503, 2016 WL 7374224, at *4 (S.D. Tex. Dec. 20, 2016); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998); *Mercer v. Duke Univ.*, 50 Fed. App'x 643, 644 (4th Cir. 2002). Because Eichmann cannot recover punitive damages for her Title IX claim as a matter of law, the Court should dismiss Eichmann's claim for punitive damages.

## III.
## CONCLUSION

For the foregoing reasons, Defendant University of Houston System prays that this Court grant its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and dismiss Eichmann's claims against it with prejudice.

    Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Evan W. Weltge*
**Evan W. Weltge**
Assistant Attorney General
Texas Bar No. 24110523
General Litigation Division

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
evan.weltge@oag.texas.gov

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I certify that that on June 14, 2024, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

| | |
|---|---|
| Mark Aronowitz | *Via E-Mail:* **markaronowitz@hotmail.com** |
| P.O. Box 1201 | |
| Texas City, Texas 77592-1201 | |
| ***Counsel for Plaintiff*** | |

                                        */s/ Evan W. Weltge*
                                        **Evan W. Weltge**
                                        Assistant Attorney General